**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

MAIN STREET AMERICA
ASSURANCE COMPANY,

     Plaintiff,

v.                                                        No. 2:20-cv-02411-MSN-cgc

MARBLE SOLUTIONS, LLC;
CARLIN MCGLOWN, INDIVIDUALLY AND
AS A REPRESENTATIVE OF
MARBLE SOLUTIONS, LLC;
ADRIAN MCGLOWN, INDIVIDUALLY AND
AS A REPRESENTATIVE OF
 MARBLE SOLUTIONS, LLC;
and DANIEL HOSEA WALLER,
INDIVIDUALLY AND AS A
REPRESENTATIVE OF MARBLE SOLUTIONS, LLC,

     Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT; ORDER**
**DENYING DEFENDANTS' MOTION FOR EXTENSION OF TIME TO RESPOND;**
**AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

---

     Before the Court are Plaintiff Main Street America Assurance Company's ("Plaintiff or "Plaintiff Main Street") Motions for Summary Judgment, (ECF Nos. 23 and 45); Defendants Marble Solutions, LLC, Carlin McGlown, and Adrian McGlown's (collectively "Defendants") Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment, (ECF No. 35); and Defendants' own Motion for Summary Judgment, (ECF No. 41).   For the reasons below, the Court **DENIES** Plaintiff's motions, **DENIES** Defendants' motion for extension of time, and **GRANTS** and **DENIES IN PART** Defendants' motion for summary judgment.

1

## Background

This is a declaratory judgment action in which the Court must determine the parties' respective duties and rights under an insurance policy issued by Plaintiff Main Street.  The Court must decide whether Plaintiff Main Street has a duty to defend and indemnify Defendants in a civil proceeding in a state court in Travis County, Texas ("Texas suit" or "underlying suit").[1] (ECF No. 1 at PageID 3.)   The underlying suit arises out of an alleged sexual assault committed by one of Defendants' employees.[2]

Defendants were contracted to remodel a hotel property in Cedar Park, Texas.  (ECF No. 1 at PageID 1; ECF No. 45-2 at PageID 449–50.)    The Texas suit plaintiffs allege that Defendants' employee, Daniel Hosea Waller,[3] raped minor plaintiff Jane Doe on April 4, 2019. (ECF No. 45-2 at PageID 449.)  Prior to this act, the Texas suit plaintiffs claim that Defendant Waller had an extensive criminal history related to child sexual offenses that Defendant Marble Solutions, LLC either knew or should have known about.  (*Id.*)

---

1.  The Texas suit is styled as *Jane Doe, individually and as next friend to Jane Doe, a minor v. Cedar Park Hospitality, Inc. d/b/a Holiday Inn Express-Cedar Park, Daniel Hosea Waller, individually and as representative of Marble Solutions, LLC, Marble Solutions, LLC, Carline McGlown, individually and as representative of Marble Solutions, LLC, Adrian McGlown, individually and as a representative of Marble Solutions, LLC, and Holiday Hospitality Franchising, LLC.* (ECF No. 1 at PageID 3; ECF No. 43-2 at PageID 420; ECF No. 45-2 at PageID 447; ECF No. 46-1 at PageID 473.)

2.  The Court refers to the fourth amended petition in the underlying suit for the alleged facts.  The parties have both acknowledged that this is the most recent operative pleading in the underlying suit, (see ECF No. 43-2 at PageID 420), and both have introduced it into the record. (ECF Nos. 35-2, 39-1, and 45-2.)

3.  In addition to being named a defendant in the underlying suit, Daniel Hosea Waller was also named as a defendant in the instant matter.  (ECF No. 1 at PageID 2.)  Defendant Waller, however, failed to make an appearance despite receiving service of summons.  (ECF No. 13-1 at PageID 181–82.)  An entry of default was entered on September 19, 2020, and a default judgment was later entered against him on December 8, 2020.  (ECF Nos. 20 and 32.)  As a result, the question remaining before the Court is whether Plaintiff owes a duty to defend and indemnify the remaining Defendants in the underlying suit.

The Texas suit plaintiffs allege that Defendant Waller intentionally assaulted the minor plaintiff in addition to alleging that he committed the intentional tort of false imprisonment. *Id.* at PageID 452–53.) They further claim that Defendant Marble Solutions, LLC was negligent in relation to its supervision of Defendant Waller. (*Id.* at PageID 452–54.) Specifically, Defendants failed to "examine the credentials of [its] employees," that they did not "properly vet their employees/contractors by performing adequate background checks," and that they did not take "reasonable care in monitoring and supervising the conduct of the employees they did hire." (*Id.* at PageID 452.) They further allege that Defendant Marble Solutions, LLC is liable under a theory of *respondeat superior*. (*Id.* at PageID 452–454.) The Texas suit plaintiffs also seek to hold Defendants Adrian McGlown and Carlin McGlown individually liable. (*Id.*)

On May 17, 2021, a co-defendant in the underlying suit, Cedar Park Hospitality d/b/a Holiday Inn Express-Cedar Park, filed crossclaims against Defendants Marble Solutions, LLC and Daniel Waller. (ECF No. 46-1 at PageID 475.) The crossclaims allege that any injuries sustained by the plaintiffs were due to Defendant Waller's intentional acts and Defendant Marble Solutions, LLC's negligence. (ECF No. 45-3 at PageID 460–61.)

## I. **The Insurance Policy**

The insurance policy (Policy No. MPG6356S) issued by Plaintiff Main Street contains the following pertinent provisions:

### A. Coverage

#### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

…

b. This insurance applies: (1) **To "bodily injury" and "property damage" only if: (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"**; (b) The "bodily injury" or "property damage" occurs during the policy period; and (c) Prior to the policy period, no insured listed under Paragraph C.1. Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

…

(2) To **"personal and advertising injury" caused by an offense arising out of your business**, but only if the offense was committed in the "coverage territory" during the policy period.

(ECF No. 1-6 at PageID 43; ECF No. 25 at PageID 244–45) (emphasis added). The policy then defines several key terms:

**F. Liability And Medical Expenses Definitions**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

4. "Coverage territory" means:
a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

…

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions

…

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's

goods, products or services;
e. Oral or written publication, in any manner, or material that violates a
person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your
"advertisement".

(ECF No. 1 at PageID 54–56; ECF No. 25 at PageID 245–46.)

Plaintiff admits that the alleged injuries in the underlying suit qualify as a "bodily injury"

and that the alleged events occurred within the "coverage territory." (*Id.* at PageID 239.) The

issues in dispute are: (1) whether the alleged injuries in the underlying suit arise from an

"occurrence," (*Id.*), and (2) whether the false imprisonment claim raised by the Texas suit

plaintiffs qualifies as a "personal and advertising injury." (ECF No. 43 at PageID 407; ECF No.

45 at PageID 434.)

## II.   **Procedural History**

Plaintiff commenced this action seeking a declaratory judgment on June 11, 2020. (ECF

No. 1.) The Court's scheduling order set May 17, 2021, as the deadline for the parties to file

dispositive motions. (ECF No. 21 at PageID 207.) Plaintiff filed its initial motion for summary

judgment on December 7, 2020. (ECF No. 23.) Defendants failed to timely respond to

Plaintiff's motion. (*See* ECF No. 40 at PageID 347); *see also* L.R. 56.1(b) ("A party opposing a

motion for summary judgment must file a response within 28 days. . . .").

Seventy-eight (78) days after Plaintiff filed its motion for summary judgment, new

counsel for Defendants made an appearance, and prior counsel moved to withdraw. (*See* ECF

Nos. 33, 34, and 36.) Defendants sought an extension of time to respond to Plaintiff's pending

motion for summary judgment that same day. (ECF No. 35.) Plaintiff opposes Defendants'

request for an extension. (ECF No. 40.)

Just eight (8) days later, and before the Court ruled on their request, Defendants' filed

their response to Plaintiff's motion for summary judgment on March 1, 2021.  (ECF Nos. 38 and 39.)  While still voicing their objection to Defendants' untimely response, Plaintiff filed its reply on March 15, 2021.  (ECF No. 42.)

On March 5, 2021, Defendants filed their own motion for summary judgment.  (ECF No. 41.)  Plaintiff filed its response on April 5, 2021.  Defendants then filed their reply on April 19, 2021.  (ECF No. 44.)

Finally, on May 17, 2021, Plaintiff filed its Supplemental Memorandum of Law in Support of Summary Judgment addressing a crossclaim raised in the underlying Texas suit. (ECF No. 45.)  Defendants filed their response on May 26, 2021.  (ECF No. 46.)

## <u>Legal Standard</u>

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment — and the Court to grant summary judgment — "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  As is the case here, when there is no dispute as to the material facts, an insurer's duty to defend is a question of law that can be decided at the summary judgment stage.  *Travelers Indem. Co. of America v. Moore & Assoc., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007).[4]

---

4.  The parties agree that this matter can be resolved at the summary judgment stage. (ECF No. 24 at PageID 227–28; ECF No. 41-1 at PageID 368–69.)

**Analysis**

**I.   Defendants' Motion for Extension of Time to Respond (ECF No. 35)**

The Court first addresses Defendants' motion for an extension of time to respond to Plaintiff's summary judgment motion. (ECF No. 35.) As stated above, Defendants did not timely file their response.

Local Rule 56.1(b) establishes that "[a] party opposing a motion for summary judgment must file a response within 28 days after the motion is served or a responsive pleading is due, whichever is later." "When an act may or must be done within a specified time, the court may, for good cause, extend the time[.]" Fed. R. Civ. P. 6(b)(1). Since Defendants' request comes **after** the expiration of the response period, Defendants bear the additional burden of showing that their failure was due to "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006); *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 241 (E.D. Ky. 2018). Excusable neglect "is a somewhat 'elastic concept,'" the determination of which is "at bottom an equitable one." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395–96 (1993). The Court balances five factors in deciding whether excusable neglect exists: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger*, 467 F.3d at 522 (quoting *Pioneer*, 507 U.S. at 395).

Defendants have failed to show excusable neglect. The first two factors— the danger of prejudice to the nonmoving party and the potential impact on judicial proceedings—arguably weigh in Defendants' favor. Plaintiff does not point the Court to any prejudice it might suffer if

Defendants' request was granted outside of the passage of time.[5]   While the passage of time is relevant, it alone is not dispositive for the Court must "tak[e] account of **all** relevant circumstances[.]" *Nafziger*, 467 F.3d at 523 (citation omitted) (emphasis added).   The Court finds that Plaintiff would face little prejudice outside of having to file additional briefing (which it already did).

Second, an extension would only slightly impact the proceedings.   The Court notes that Plaintiff's motion for summary judgment came well before the deadline set in the Court's scheduling order.   (*See* ECF No. 21 at PageID 207.)   Even with the late response, the matter has been fully briefed well before the relevant deadlines.

Concerning the remaining factors, however, the Court finds that they weigh against Defendants' request.   The Court first looks to Defendants' reason for the delay because this "important factor" plays a crucial role in the Court's analysis.   *See Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 429 (6th Cir. 2006).   Defendants seemingly rely on the fact they obtained new counsel as the reason for their delay.   (ECF No. 35-1 at PageID 288.)   This explanation ignores the fact that Defendants had counsel during the entire period at issue.   In fact, prior counsel did not withdraw until fifty (50) days **after** Defendants' response was due.

It is well understood that "[a]ttorney error or inadvertence will not ordinarily support a finding of excusable neglect[.]" *Morgan*, 165 F. App'x at 429; *see also Allen v. Murph*, 194 F.3d 722, 724 (6th Cir. 1999.) ("[A] fair-minded judge could easily find that the carelessness of these attorneys in allowing the 14–day period to run was inexcusable.").   The Court is hesitant to excuse Defendants' failure without additional information mitigating prior counsel's failure.

The Court reaches a similar conclusion concerning the remaining two factors.   Given that this case mainly turns on questions of law and not on any disputed material fact, Defendants'

---

5.  Plaintiff does not even discuss any of the factors identified in *Nafziger* in its response.

failure to respond was entirely within their control.  Put differently, there were no impediments keeping Defendants from timely responding like the need to conduct discovery.  *See Adams v. Wal-Mart Stores, Inc.*, No. 1:19-cv-00551, 2021 WL 425632, at *3 (S.D. Ohio Feb. 8, 2021). Finally, while new counsel for Defendants might have acted in good faith, the same cannot be said about Defendants' prior counsel.[6]

After reviewing the relevant factors, the Court finds that, on balance, they weigh against Defendants' request to file a late response.  Therefore, the Court **DENIES** Defendants' motion, (ECF No. 35).  The Court will not consider Defendants' late filed response (and its accompanying documents) to Plaintiff's summary judgment motion.

## II.   <u>Whether Plaintiff has a duty to defendant Defendants</u>

The Court now turns to the merits of the parties' respective motions for summary judgment.  This matter is before the Court based on diversity jurisdiction.  (ECF No. 1 at PageID 1.)  The parties are in agreement that Tennessee law governs this dispute, (ECF No. 24 at PageID 224–25; ECF No. 41-1 at PageID 368); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Thompson v. Am. Gen. & Accident Ins. Co.*, 448 F. Supp. 2d 885, 888 (M.D. Tenn. 2006).

This case tasks the Court with determining the parties' respective rights and obligations pursuant to a businessowners insurance policy.  The Court applies the same rules of construction to the insurance policy at issue as it would to any other contract.  *Travelers Indem. Co. of Am. v. Moore & Assoc., Inc.*, 216 S.W.3d 302, 305–06 (Tenn. 2007) (citing *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990)).  The insurance contract's terms "must be interpreted fairly and

---

6.  Defendants seemingly concede that prior counsel simply failed to file a response without any good reason.  (*See* ECF No. 35-1 at PageID 290 n. 1) (explaining that allowing Defendants to file an untimely response "would have the salutary effect of obviating professional responsibility concerns for anyone involved in this matter").

reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006). Any ambiguity in the policy's terms, however, will be construed in the insured's favor. *See Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W. 3d 811, 815 (Tenn. 2000). The goal is to "determine the intention of the parties and give effect to that intention." *Naifeh*, 204 S.W. 3d at 768.

Whether an insurer's duty to defend arises "depends solely on the allegations contained in the underlying complaint." *Id.* A duty to defend arises if the underlying complaint alleges damages that "are within the risk covered by the insurance contract and for which there is a potential basis for recovery." *Id.* "If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W. 2d 471, 480 (Tenn. Ct. App. 1996). The Court will construe in the insured's favor any doubts concerning whether a potential claim triggers coverage. *Travelers Indem. Co.*, 216 S.W. 3d at 305.

The policy at issue here is a businessowners insurance policy. (ECF No. 1-6 at PageID 43.) These types of policies do not insure against "all risks" but rather insure against certain risks. *Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, 972 S.W. 2d 1, 6 (Tenn. Ct. App. 1998). As a result, these policies "have been and continue to be frequently litigated." *Travelers Indem. Co.*, 216 S.W. at 305. "Unfortunately, this litigation has resulted in much confusion and little consensus." *Id.*

This case is a perfect example. The Texas suit plaintiffs seek to hold both Defendant Waller liable for his own alleged intentional acts and Defendants liable for their own alleged negligent acts in relation to their supervision of Defendant Waller. Tennessee courts, however, have not squarely addressed whether claims against an employer arising out of its own negligent

hiring or negligent supervision that led to the claimant's injuries as a result of the employee's intentional conduct might qualify as an "occurrence" under a businessowners insurance policy. (ECF No. 24 at PageID 232; ECF No. 41-1 at PageID 370.)   This Court attempts to anticipate how the state's highest court would resolve the issue in the absence of direct guidance.  *See Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 508 (6th Cir. 2003).

A.  Whether the Texas suit plaintiffs' injuries were caused by an "occurrence"

The policy provides that Plaintiff Main Street will have a duty to defend Defendants against all suits related to bodily injuries "caused by an 'occurrence.'"  (ECF No. 1-6 at PageID 43; ECF No. 25 at PageID 244–45.) An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   (ECF No. 1-6 at PageID 56; ECF No. 25 at PageID 246.)

Tennessee courts have interpreted the term an "accident" to mean "an event not reasonably foreseen, unexpected and fortuitous."  *Travelers Indem. Co.*, 216 S.W. 3d at 308 (quoting *Gassaway v. Travelers Ins. Co.*, 439 S.W. 605, 608 (Tenn. 1969)); *State Farm Fire and Cas. Co. v. McGowan*, 421 F.3d 433, 437 (6th Cir. 2005) (quoting *Gassaway*, 439 S.W. at 608); *see also Tuturea v. Tenn. Farmers Mut. Ins. Co.*, No. W2009-01866-COA-R3-CV, 2010 WL 2593627, at *11 (Tenn. Ct. App. June 29, 2010) (defining an accident as "an unforeseen, unexpected event occurring without intention or design").   Tennessee courts have also construed an "accident" to encompass the "negligent acts of the insured causing damage which is undesigned and unexpected."  *Travelers Indem. Co.*, 216 S.W. at 308 (quoting *Gassaway*, 439 S.W. at 607).

Plaintiff argues that the allegations in the underlying suit do not qualify as an "occurrence" because the alleged injuries arose from the intentional actions of Defendant Waller.

(ECF No. 24 at PageID 239.) Plaintiff relies on a line cases—both from Tennessee and from outside of Tennessee— as support.  (ECF No. 24 at PageID 229–238.)  For the reasons discussed below,  the Court is not persuaded.

The Court first turns to the case of *Erie Ins. Exch. v. Maxwell*, No. M2017-00193-COA-R9-CV, 2017 WL 5485491 (Tenn. Ct. App. Nov. 15, 2017), which addresses a "narrow issue" that is not at all analogous to the one at bar.  *Id.* at *4.  In *Erie*, a third party brought a claim for negligent misrepresentation against the insureds arising from the sale of a property that had a flooding issue.  *Id.* at *1, *4.  Several months after the sale of the property, the property did in fact flood.  *Id.* at *1.  For coverage to exist in *Erie*, the injury complained of had to be "caused by an 'occurrence,'" as defined by the policy.  *Id.* at *4.[7]  The *Erie* court held that there was no coverage because "the occurrence that caused the property damage was flooding, not misrepresentations." *Id.*

*Erie* is distinguishable because the allegations in the underlying suit place Defendants' alleged negligence as one of the "causes" of the Texas suit plaintiffs' injuries.  Unlike in *Erie*, there is no external, independent event like a flood.  Instead, Defendants' alleged negligence started the causal chain that resulted in the Texas suit plaintiffs' injuries.

Plaintiff's citation to *Norton v. Methodist Health Sys., Inc.* is inapposite because the *Norton* plaintiff did not raise any claims against the insured; instead, the *Norton* plaintiff only sought recovery for the intentional conduct of the insured's employee.  *Norton v. Methodist Hosp. Sys., Inc.*, 1987 WL 14338, at *1–*2 (Tenn. Ct. App. July 24, 1987).  *Norton* does not provide any guidance in determining whether coverage should extend to an insured's negligent conduct as the employer of an intentional tortfeasor.

---

7.  The policy in *Erie* defined an "occurrence" as "an accident, including continuous or repeated exposure to the same general harmful conditions."  *Erie*, 2017 WL 5485491, at *4.

In recognition of the sparse case law addressing the issue at bar, Plaintiff next looks to cases outside of Tennessee for guidance.  Plaintiff first relies on *Talley v. Mustafa Mustafa*, 911 N.W.2d 55 (Wis. 2018).  (ECF No.  24 at PageID 232.)  *Talley* stands for the proposition that "when a negligent supervision claim is based **entirely** on an allegation that an employer should have trained an employee not to intentionally punch a customer in the face, no coverage exists." *Talley*, 911 N.W.2d at 63 (emphasis added).  Critically, the *Talley* court ruled against the insured because the *Talley* plaintiff did not allege facts showing that the insured's own conduct outside of not training its employees to not hit customers caused the *Talley* plaintiff's injuries.  *Id.* at 67. On that note, the *Talley* court appropriately remarked that "[t]ypically, an employee's training and subsequent supervision does not include a segment on how to refrain from punching others[.]" *Id.* at 67.

Unlike in *Talley*, the Texas suit plaintiffs point to the Defendants own independent acts as causes of the alleged injuries.  Among other claims, the Texas suit plaintiffs allege that Defendants failed to conduct a proper background check on Defendant Waller.  (ECF No. 45-2 at PageID 452); *contra Talley*, 911 N.W.2d at 63 ("[T]he negligent supervision claim against Mustafa can qualify as an occurrence only if facts exist showing that Mustafa's own conduct accidentally caused Talley's injuries.").

Plaintiff next cites *Mountain States Mut. Cas. Co. v. Hauser*, 221 P.3d 56 (Colo. App. 2009).  (ECF No. 24 at PageID 235.)  *Hauser* is problematic for two reasons.  First, despite allegations concerning the insureds' potential negligence, the trial court ultimately found that the insureds had acted intentionally.  *Hauser*, 221 P.3d at 58, 61 ("The trial court determined that evidence presented by Hauser at a damages hearing supported her various claims as well as her contention that Mulligan's acted willfully and wantonly."); *see also Am. Med. Response Nw., Inc.*

*v. ACE Am. Ins. Co.*, 526 F. App'x 754, 756 (9th Cir. 2013). Second, the insureds in *Hauser* were alleged to have known of at least one prior occasion where the employee sexually assaulted a co-worker. *Hauser*, 221 P.3d at 61. That fact triggered an exclusion provision within the policy for expected or intended conduct. *Id.* The Texas suit does not involve similar factual allegations nor does Plaintiff make similar legal arguments.[8]

The Court finds Plaintiff's reliance on *Am. Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.* misplaced because it dealt with an "Owner's & Tenant's" policy that explicitly limited liability to accidents occurring on the premises. *Am. Empire*, 756 F. Supp. 1287, 1289 (N.D. Cal. 1991). In fact, the *Am. Empire* court noted that the policy at issue "must be distinguished from insurance against liability arising from the nature of the enterprise or activity conducted therein" and further stated that "[i]f Cab Co. had wanted to be insured against liability for acts committed by its drivers while off company premises it could have purchased a comprehensive general liability policy." *Id.* Even more, the validity of *Am Empire*'s holding, which applied California state law, was undermined by the California Supreme Court's opinion in *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Const. Co.*, 418 P.3d 400, 407 (Cal. 2018).

Plaintiff finally cites to the case of *Farmers All. Mut. Ins. Co. v. Salazar*, 77 F.3d 1291 (10th Cir. 1996), which involved a homeowner's insurance policy. (ECF No. 24 at PageID 237.) The insured in *Salazar* negligently supervised her son by allowing him to have a handgun, which he later used to kill someone, despite her knowing of the son's tendency to use the firearm to threaten people. *Id.* at 1293–94.

---

8. *Hauser* presents further problems in that the *Hauser* court relied on *Am. Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.*, 756 F. Supp. 1287 (N.D. Cal. 1991), in arguing that coverage did not exist. As the Court explains later, the holding of *Am. Empire* was called into question by the California Supreme Court. *See Liberty Surplus Ins. Corp. v. Ledesma & Meyer Const. Co.*, 418 P.3d 400, 407 (Cal. 2018).

14

The *Salazar* court determined that no coverage existed because the injury was not caused by an occurrence as defined in the policy.[9] *Id.* at 1297.  In reaching this conclusion, the *Salazar* court made a deduction from two existing principles: in determining when and where an "occurrence" happens, courts generally focus on the circumstances surrounding the alleged injury, not the alleged acts that caused the injury.  *Id.* at 1295–96.  These principles led the *Salazar* court to conclude that "the question of whether there was an 'occurrence' should be resolved by focusing on the injury and its immediately attendant causative circumstances." *Id.* Because the alleged injury in *Salazar* resulted from the intentional acts of the insured's son, coverage did not extend to the insured's negligent acts.  *Id.* at 1297.

Plaintiff effectively asks that the Court adopt the reasoning in *Salazar*.  The Court declines to do so.  As an initial concern, answering when or where an occurrence took place is analytically different from determining whether an alleged injury was caused by an occurrence. The former analysis is amenable to discrete, identifiable answers.  The latter issue, however, has resulted in a divergence of opinions.  On one hand is the position expressed in *Salazar*.  *See, e.g.*, *Salazar*, 77 F.3d at 1296–97 ("[T]he question of whether there was an 'occurrence' should be resolved by focusing on the injury and its immediately attendant causative circumstances."); *Hauser*, 221 P.3d at 60 (adopting the approach in *Salazar*); *TIG Ins. Co. v. Premier Parks, Inc.*, No. Civ.A.02C04126JRS, 2004 WL 728858, at *10 (Del. Super. Ct. Mar. 10, 2004).

On the other hand, courts have found that coverage extends to the insured's independent negligent conduct.  *See, e.g.*, *Westfield Ins. Co. v. Tech Dry*, 336 F.3d 503, 510 (6th Cir. 2003) (finding that coverage extended to the insured's negligent hiring of the intentional tortfeasor); *Evangelical Lutheran Church in Am. v. Atl. Mut. Ins. Co.*, 169 F.3d 947, 951 (5th Cir. 1999)

_____

9.  The policy in *Salazar* defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."  *Salazar*, 77 F.3d at 1294.

(reasoning that the employee's intentional acts "are not the insureds' intentional acts" when ruling in favor of the insured); *U.S. Fidelity & Guar. Co. v. Open Sesame Child Care Ctr.*, 819 F. Supp. 756, 759–61 (N.D. Ill. 1993) (finding in favor of the insured); *Ledesma & Meyer Const. Co.*, 418 P.3d at 402, 408–09 (finding that insurance coverage extends to cover the negligent acts of the insured as it relates to its employee's intentional conduct).

As noted earlier, Tennessee courts have not directly addressed the issue. Thus, this Court must anticipate how the Tennessee Supreme Court would rule on the issue at bar. *See Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 508 (6th Cir. 2003). The Court finds that the Tennessee Supreme Court would likely find that Plaintiff has a duty to defend Defendants in the underlying suit.

First, the policy at issue does not purport to limit the Court's analysis to just the alleged injury and its immediate surrounding circumstances. The policy only provides that the alleged injury must be "caused by" an "occurrence." (ECF No. 1-6 at PageID 43; ECF No. 25 at PageID 245.) The phrase "caused by" eludes easy definition. *See* CAUSE, Black's Law Dictionary (11th ed. 2019) (defining "cause" as "[s]omething that produces an effect or result); *see also Naifeh*, 204 S.W. 3d at 768 ("An insurance policy must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning."). Indeed, the parties' briefings and the above cases illustrate the difficulty in grappling with this issue. "[A]ny doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." *Travelers Indem. Co.*, 216 S.W. 3d at 305. Here, such doubt exists.

Further, the Court also believes that the principles already embodied in existing Tennessee caselaw warrant a finding that Plaintiff owes a duty to defend Defendants in the underlying suit. Take first the principle that Plaintiff Main Street's duty to defend is triggered if

"even one of the allegations is covered by the policy." *Drexel Chem. Co.*, 933 S.W. at 480.  The Texas suit alleges that Defendants were negligent in a variety of ways.  Plaintiff has not seriously contested that these claims would not normally fall within the policy's purview.   Instead, Plaintiff directs the court to focus solely on the actions of Defendant Waller.   (ECF No. 24 at PageID 239.)   This myopic view "impermissibly ignore[s] the employer's independent acts which gave rise to the alleged tort." *U.S. Fidelity*, 819 F. Supp. at 760.[10]   Moreover, this approach by Plaintiff runs counter to Tennessee caselaw that directs this Court to read the allegations in the underlying suit through a lens that favors the insured.   *See Travelers Indem. Co.*, 216 S.W.3d at 305 ("Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured."); *Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 491 (Tenn. Ct. App. 1999) (giving the underlying complaint a "liberal construction" in finding for the insured); *see also Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 815 (Tenn. 2000) ("If the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured.").

---

10.  The Court pauses to briefly address the argument by Plaintiff that the alleged acts of Defendants are not accidental because the Texas suit plaintiffs alleged that Defendants "knew or should have known" about Defendant Waller's history.  (ECF No. 24 at PageID 239.)  The Court is not persuaded by this perfunctory argument.  First, it is not entirely clear what argument Plaintiff is making.  This type of allegation is commonly associated with negligence claims.  *See Horace Mann Ins. Co. v. Tenn. Mun. League*, No. 03A01-9308-Ch-00291, 1994 WL 108921, at *2 (Tenn. Ct. App. Mar. 31, 1994).  As stated above, Tennessee courts have recognized that an insured's negligent acts can constitute an occurrence.  *See Travelers Indem. Co.*, 216 S.W. at 308–09.  Second, assuming *arguendo* that Defendants knew of Defendant Waller's history, that fact alone would not preclude liability.  While Defendants might have known of Defendant Waller's history, it does not follow that what occurred was intended by Defendants.  *See Standard Const. Co., Inc. v. Maryland Cas. Co.*, 359 F.3d 846, 851(6th Cir. 2004).  In other words, an intentional act that results in unforeseen or unintended consequences can still qualify as an "occurrence."  *Id.*  Thus, this argument is without merit.

Further, the Court must examine the "entire factual situation" in determining whether the underlying suit alleges claims that trigger the insurer's duty to defend. *Gassaway v. Travelers Ins. Co.*, 439 S.W.2d 605, 607 (Tenn. 1969)). As previously noted, Tennessee courts have construed the term "accident" to include the insured's "negligent acts" which cause damage that is "undesigned and unexpected." *Travelers Indem. Co.*, 216 S.W.3d at 308 (citing *Gassaway*, 439 S.W.2d at 607). Whether an accident is foreseeable is determined from the standpoint of the insured. *Id.*

After examining the entire factual record, the Court believes Plaintiff has a duty to defend Defendants because that alleged injury here was not foreseeable. While the Texas suit plaintiffs do allege that Defendant Waller had a criminal history related to child sexual offenses, there are no allegations that Defendants knew of any **prior specific** acts committed by Defendant Waller. *Contra Hauser*, 221 P.3d at 61 ("According to Hauser's allegations, Mulligan's knew of at least one incident when Gondrezick had assaulted another Mulligan's employee."). Further, the likelihood that Defendants could have foreseen the alleged events is minimized by the fact that Defendants' business did not naturally place Defendant Waller around children. Indeed, courts have found in the insured's favor even in situations where the insured's business operations arguably made the risk of such offenses foreseeable. *See Evangelical Lutheran Church in America v. Atl. Mut. Ins. Co.*, 169 F.3d 947, 951 (5th Cir. 1999) (involving claims of sexual assault against a minister); *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842 F. Supp. 1151, 1165 (W.D. Ark. 1994) (involving claims against an employee who worked at an arcade). Moreover, even if Defendants made the intentional choice to hire Defendant Waller, it does not necessarily follow that Defendants either intended or could foresee what occurred. *See Standard Const. Co., Inc. v. Maryland Cas. Co.*, 359 F.3d 846, 850 (6th Cir. 2004) (citing *Tenn.*

*Farmers Mut. Ins. Co. v. Evans*, 814 S.W.2d 49, 55–56 (Tenn. 1991)); *Westfield Ins. Co.*, 336 F.3d at 510.

Tennessee courts also recognize the "concurrent causation doctrine," which stands for the proposition that "coverage under a liability policy is equally available to an insured whenever an insured risk constitutes a concurrent proximate cause of the injury." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 888 (Tenn. 1991); *see also Planet Rock, Inc.*, S.W.3d at 491–93 (applying the concurrent causation doctrine in finding in favor of the insured); *Allstate Ins. Co. v. Grimes*, No. M2003-01542-COA-R3-CV, 2004 WL 2533826, at *5–*6 (Tenn. Ct. App. Nov. 8, 2004) (same). Put differently, coverage can still exist "where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result[.]" *Watts*, 811 S.W.2d at 887. Although these cases generally address whether certain exclusionary provisions apply, *see, e.g., Planet Rock, Inc.* 6 S.W. 3d at 491, they at least incidentally support the notion that determining what qualifies as an occurrence requires a more holistic approach than the one suggested by Plaintiff.

For example, in the seminal case recognizing the doctrine, the Tennessee Supreme Court in *Allstate Ins. Co. v. Watts* found that coverage applied even though one of the causes of the alleged injury was excludable under the policy. 811 S.W.2d at 885, 887–88. In *Watts*, the insured was assisting a friend in replacing the brake shoes on a truck. *Id.* at 884. Another friend at the scene, Mr. Watts, assisted by using a blowtorch to remove a stuck lug-nut. *Id.* Before using it, the insured assured Mr. Watts that there was no flammable material in the area. *Id.* The insured was wrong, and a fire broke out in a nearby oil pan. *Id.* at 885. While attempting to remove the pan, the insured dropped it and then kicked it, splashing Mr. Watts with flammable liquid. *Id.*

The exclusion provision at issue in *Watts* provided that "[w]e do not cover bodily injury or property damage **<u>arising out of</u>** the ownership, maintenance, use, occupancy . . . loading or unloading of any motorized land vehicle or trailer." *Id.* at 884 (emphasis added). The insurer relied on this provision in asserting that coverage did not apply because the series of events that led to Mr. Watts' injury arose out of the maintenance on the truck. *Id.* at 885. In effect, the insurer argued that the exclusion provision applied if the excludable act had "**<u>any</u>** causal relationship" to the alleged injury. *Id.* (emphasis in original).

The *Watts* court rejected this broad interpretation of the exclusion provision, explaining that:

> [t]here is certainly no question that using the torch in the manner described here would constitute an excludable risk under the policy if standing alone. This does not mean, however, that we can simply ignore the presence of other causal factors involved—the placement of the flammable substance, Crafton's purported failure to warn of the substance upon specific inquiry, and the negligence in dropping and kicking the burning liquid—all of which are insured risks that the insuror was willing to accept a premium for *and* are the acts that comprise the basis of the lawsuit brought by Watts against the insured as evidenced by the allegations in the complaint itself.

*Id* at 888. The *Watts* court expressed skepticism concerning the insurer's proposed approach because it would be "difficult to conceive of a rule that draws a justifiable line between coverage and no coverage at any reasonable point." *Id.* at 887. The Court concluded by stating "[w]e reject the contention that there can be no coverage when the chain of events leading to the ultimate harm is begun by an excluded risk, concluding instead that coverage cannot be defeated simply because excluded risks might constitute an additional cause of the injury." *Id.*

In another case, in *GRE Ins. Grp. v. Reed*, the Tennessee Court of Appeals addressed "whether the policy at issue affords liability coverage to the [insured] for a negligent entrustment claim when Reed, the entrustee, committed an intentional act excluded by the policy." No.

01A01-9806-CH-00300, 1999 WL 548498, at *2 (Tenn. Ct. App. July 12, 1999). As is the case here, the *Reed* court noted that this was an issue of first impression. *Id.* In addressing whether the insurer had a duty to indemnify the insured regarding Reed's intentional acts under the policy, the Court reasoned that the policy applied because of the insured's own independent negligent actions. *Id.* at *7. In reaching this conclusion, the *Reed* court explained that Tennessee courts long recognized the tort of negligent entrustment and that the purpose of an intentional act exclusion was to prevent the use of insurance to cover an **insured's intentional acts**. *Id.* at *6.

Admittedly, the facts in *Reed* are not directly analogous. *Reed* did not address whether a duty to defend arose due to Reed's intentional acts because the underlying complaint also alleged that Reed was negligent. *Id.* at *3. Further, the duty to indemnify is narrower than an insurer's duty to defend. *Id.* at *4; *see also Travelers Indem. Co.*, 216 S.W.3d at 305. Even so, the *Reed* court looked at the circumstances as a whole and did not, as Plaintiff would suggest, focus solely on the intentional acts of Reed.

All in all, the Court is not persuaded by Plaintiff's argument and finds that existing Tennessee caselaw warrants that Plaintiff defend Defendants in the underlying suit. If accepted, this narrow approach suggested by Plaintiff would conflate the Defendants' alleged negligent conduct with Defendant Waller's alleged intentional conduct. *See U.S. Fidelity & Guar. Co.*, 819 F. Supp. at 760. Further, Plaintiff's approach runs counter to the well-established principles embodied by Tennessee caselaw. Instead of reading the underlying complaint narrowly, Tennessee caselaw directs the Court to read the allegations in the underlying complaint broadly and in favor of finding coverage. More on this point, in determining whether coverage exists, the Court must make its determination based on the entire factual record. Plaintiff's approach

here would have the Court ignore Defendants' own alleged independent acts in favor of focusing solely on the acts of Defendant Waller.  For the reasons above, this the Court will not do.

In sum, Plaintiff admits that the alleged injuries in the underlying suit broadly meet the definition of a "bodily injury" and that the alleged events occurred within the "coverage territory."  (ECF No. 24 at PageID 239.)  Plaintiff only challenges whether the alleged acts qualified as an occurrence.  (*Id.*).  After review, the Court believes that allegations found in the underlying suit qualify as an "occurrence" under Tennessee law.  Accordingly, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiff's motions as to this issue.

B.   Whether the underlying suit alleges a "personal and advertising injury"

The underlying suit alleges that Defendant Waller committed the tort of false imprisonment when he "willfully detained Plaintiff Jane Doe without legal authority or justification, against Plaintiff's consent, through violence, threat or other means that kept Plaintiff from moving from one place to another."  (ECF No. 45-2 at PageID 453.)

The insurance policy obligates Plaintiff to defend Defendants against claims alleging a personal and advertising injury "arising out of [Defendants'] business."  (ECF No. 1-6 at PageID 43; ECF No. 25 at PageID 245.)   The policy defines a "personal and advertising injury" as a:

> injury, including consequential "bodily injury", arising out of one or more of the following offenses:
> **a. False arrest, detention or imprisonment;**
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, or material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(ECF No. 1-6 at PageID 56; ECF No. 25 at PageID 246) (emphasis added).

Defendants argue that the inclusion of the false imprisonment claim in the underlying suit triggers Plaintiff's duty to defend and indemnify pursuant to the policy. (ECF No. 41-1 at PageID 376.) Plaintiff counters by arguing that, although the underlying suit alleges a false imprisonment claim, the false imprisonment claim does not arise out of Defendants' business activities. (ECF No. 43 at PageID 407.) In other words, merely alleging a claim of false imprisonment is not sufficient to trigger coverage. (*Id.*)

On this point, the Court agrees with Defendants and finds that the false imprisonment claim arguably falls within the policy's provisions. The Texas suit plaintiffs allege that Defendant was employed and contracted by Defendants when the alleged assault took place. (ECF No. 45-2 at PageID 449.) Further, the underlying suit alleges that the assault occurred in the same property that Defendants were hired to remodel. (*Id.* at PageID 450.) Even more, the underlying suit seeks to hold Defendants liable under a theory of *respondeat superior*, alleging that "all of the agents, servants, or employees of Defendants. . . were acting within the course and scope of their employment or official duties and in furtherance of the duties of their office or employment." (*Id.* at PageID 454.) These allegations taken together arguably fall within the policy's provisions. *See Naifeh*, 204 S.W. 3d at 768 ("When there is doubt or ambiguity as to its meaning, an insurance contract must be construed favorably to provide coverage to the insured."); *Drexel Chem. Co.*, 933 S.W.2d at 480.

Additionally, the underlying suit alleges that "the other Defendants are liable for the damages resulting from the false imprisonment based on the negligence and gross negligence claims as well as the respondeat superior allegation set forth in other parts of this complaint."

23

(ECF No. 45-2 at PageID 453.)   Assuming *arguendo* that the allegations against Defendant Waller would not fall under the policy's provisions, the separate allegations against Defendants likely would.

The Court is not persuaded by Plaintiff's counter arguments.  First, Plaintiff reads the allegations in the underlying suit too narrowly in arguing that the Texas suit plaintiffs did not allege that the injury arose out of Defendants' business.  Second, Plaintiff's argument that this provision typically provides coverage to address the common law issue of "Shopkeeper's Privilege" is not well-taken.  There is nothing in the policy that supports this argument nor does Plaintiff point the Court to any caselaw that supports this assertion.  Accordingly, the Court finds that the claims in the underlying suit allege a personal and advertising injury.  The Court, therefore, **GRANTS** Defendants' motion for summary judgment as to this claim and **DENIES** Plaintiff's motions for summary judgment.

### III.   <u>Whether Plaintiff has a duty to indemnify Defendants</u>

An insurer's duty to defend is a distinct question from insurer's duty to indemnify.  *See Am. Guar. & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d, 1025, 1041 (E.D. Tenn. 2017) (citing *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994)).  This stems from the recognition that the duty to defend is broader than the duty to indemnify because the duty to defend is determined by the facts as alleged in the underlying complaint.  *Travelers Indem. Co.*, 216 S.W.3d at 305.  The duty to indemnify, however, is determined by the facts found by a trier of fact.  *Torpoco*, 879 S.W.2d at 835.

Because the duty to indemnify turns on the facts as determined by a trier of fact, courts have held that this question is not amenable for determination at the summary judgment stage.  *See id.* (explaining that determination on the duty to indemnify issue was "not appropriate for

summary judgment"); *see also Policeman's Benefits Assoc. of Nashville et al. v. Nautilus Ins. Co.*, No. M2001-00611-COA-R3-CV, 2002 WL 126311, at *8 (Tenn. Ct. App. Feb. 1, 2002) (holding that "any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim"); *Philadelphia Indem. Ins. Co. v. Priority Pest Protection, LLC*, 398 F. Supp. 3d 280, 283 (M.D. Tenn. 2019) ("[D]eclaratory judgment actions are 'seldom helpful' when they seek an advance opinion on indemnity issues, especially ones that turn entirely on state law."); *Guideone Am. Ins. Co. v. Perry*, No. 2:15-cv-2085-SHL-cgc, 2016 WL 7497583, at *1, *2 n.1 (W.D. Tenn. Apr. 12, 2016) ("As an initial matter, the Court is only in a position to rule on summary judgment as to GuideOne's duty to defend because the only discovery in this case has been the pleadings in the Texas lawsuit."). The Court reaches a similar conclusion here. Accordingly, the Court **DENIES WITHOUT PREJUDICE** both Defendants' and Plaintiff's respective motions as to the issue whether a duty to indemnify exists.

## Conclusion

For the reasons above, the Court **DENIES** Plaintiff's motions for summary judgment, **DENIES** Defendants' motion for an extension of time, and **GRANTS** Defendants' motion as to the issue of Plaintiff's duty to defend. The Court **DENIES WITHOUT PREJUDICE** both parties' motions as to the issue of whether Plaintiff has a duty to indemnify Defendants. The pretrial conference in this matter set for Friday, September 10, 2021, at 10:30 a.m. will be converted to a status conference.

**IT IS SO ORDERED**, this the 30th day of August, 2021.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE